Joshua W. Carden, SBN 021698
JOSHUA CARDEN LAW FIRM, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
(480) 454-1100
(480) 454-1101 (Fax)
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy Wallace,<br><br>                    Plaintiff,<br><br>v.<br><br>Lockheed Martin Corporation,<br><br>                    Defendant. | **ORIGINAL COMPLAINT** |

Plaintiff Stacy Wallace, by and through undersigned counsel, seeks relief in this Original Complaint against Defendant Lockheed Martin Corporation ("Lockheed"), as follows:

## INTRODUCTION

1. Plaintiff Stacy Wallace has numerous federal claims against this Defendant. However, the other claims require administrative remedy exhaustion through the EEOC – which process is not yet complete. Ms. Wallace brings this case now to preserve her FMLA interference and retaliation claims, which have different damages, different limitation periods, and do not have the same administrative remedy exhaustion requirements.

## THE PARTIES

2. Plaintiff Stacy Wallace is a resident of Maricopa County, Arizona, and, at all relevant times in this Complaint, an "employee" of Lockheed for purposes of the Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq*.

3. Defendant Lockheed Martin Corporation is a Maryland corporation authorized to do business in and doing business in Arizona. All acts alleged in this Complaint occurred in Maricopa County, Arizona.



1

4. Lockheed was an "employer" of Plaintiff within the meaning of the FMLA at all times material to this action.

5. At all times pertinent to this Complaint, Lockheed's management officials were acting within the course and scope of their employment with Lockheed; and as a result thereof, Defendant Lockheed is responsible and liability is imputed for the acts and omissions of its management officials, as alleged herein, under the principle of *respondeat superior*, agency, and/or other applicable law.

6. Defendant Lockheed, at all relevant times herein, employed over 500 persons.

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

8. The unlawful employment practices described herein were committed within the State of Arizona, on Defendant's premises located in Maricopa County, State of Arizona.

9. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## ALLEGATIONS COMMON TO ALL CLAIMS

10. Lockheed is one of the largest defense contractors in the country.

11. Ms. Wallace was hired by Lockheed as an Computer Systems Security Analyst Manager on October 22, 2009.

12. In June 2014, her position changed to Information System Security Risk Analysis Manager.

13. Her primary work location was Luke Air Force Base.

14. Ms. Wallace's job required her to have a "secret" level security clearance, which she possessed throughout most of her employment with Lockheed.

15. Ms. Wallace notified her immediate supervisor Darin Crowley in November 2015 that she had a serious health concern and may need to take medical leave.

16. Mr. Crowley initially asked her to "hold off" on applying for leave under the FMLA.

17. Ms. Wallace acquiesced to that request.

18. In mid-December, Ms. Wallace informed her team at Luke Air Force Base that she would be taking medical leave.



19. Mr. Sellers began making jokes about the high cost that Ms. Wallace would be to Lockheed, her needing a handicap spot, and that the death benefits would cost the shareholders.

20. Ms. Wallace first approached Lockheed's Human Resources on or about December 22, 2015 to inquire after her options.

21. Ms. Carolyn Jones in Lockheed's HR department recommended that Ms. Wallace seek "intermittent" FMLA leave in order to balance Ms. Wallace's health concerns and the transition process that worried Ms. Wallace's superiors.

22. Ms. Wallace did not receive the FMLA form WH-381 or its equivalent from Lockheed at that time.

23. Ms. Wallace supplied written documentation from her medical provider supporting her intermittent leave.

24. Ms. Wallace continued to discuss her medical leave options with her supervisors.

25. She quickly grew concerned that Dave Sellers in particular was looking to get rid of her because, *inter alia*, she was going to be gone on medical leave.

26. In early January 2016, Ms. Wallace reported to Darin Crowley that she believed Dave Sellers was trying to push her out of the company after her request to take FMLA leave.

27. On January 14, 2016, Ms. Wallace informed the entire cyber-team that she planned on taking medical leave.

28. Ms. Wallace's supervisor Darin Crowley asked her to hold off on taking leave until a meeting could take place on January 26, 2016 with multiple supervisors to discuss the transition and her FMLA concerns.

29. Ms. Wallace informed Mr. Crowley again that she felt that she was being jerked around on the FMLA leave, and, because of Sellers, felt that her job was not safe if she took leave.

30. Mr. Crowley referred Ms. Wallace to his boss Mark Cheeks.

31. Ms. Wallace made multiple calls and sent multiple emails in January 2016 to Mr. Cheeks to express her concerns.

32. She heard back from Mr. Cheeks exactly once: to say only that Darin Crowley would be handling the FMLA issue.



33. Ms. Wallace made multiple calls in January 2016 to find out what paperwork she needed to fill out in order to take FMLA, to no avail.

34. On January 26, 2016, Ms. Wallace met with supervisors Dave Sellers, Darin Crowley, and Rickey Romanini regarding her requests for FMLA.

35. They dismissed her various concerns, and did not discuss the FMLA issues. Ms. Wallace informed them that she would be reporting the three of them to Lockheed's Ethics department.

36. Rickey Romanini instructed me to use my chain of command instead of going to Ethics.

37. Ms. Wallace did so immediately by reporting the issues to Darin Crowley and reported the issue to HR on the same day.

38. Upon information and belief, Dave Sellers made a false report regarding Ms. Wallace to Lockheed's Ethics department on January 27, 2016, the day after the meeting with Ms. Wallace.

39. On February 1, 2016, Ms. Wallace inquired of Marie Walsh in Lockheed's Ethics Department why her FMLA packet was being held up.

40. On February 1, 2016, Ms. Wallace finally received FMLA paperwork and took it to her medical provider for consultation and eventual completion.

41. On or about February 8, 2016, Danielle Minus (among others) held a conference call with Ms. Wallace and informed her she could not take FMLA but that effective immediately, she was being placed on paid administrative leave.

42. On February 9, 2016, Ms. Wallace learned that she had been replaced in her position by Adam Young.

43. On or about February 13, 2016, Ms. Wallace officially submitted a request from her medical provider for FMLA leave.

44. On or about February 23, 2016, Ms. Minus contacted Ms. Wallace again and informed her that "legal" had informed her that her previous pronouncement had been a mistake, and that Ms. Wallace was entitled to FMLA leave.

45. On or about February 25, 2016, Lockheed's HR informed Ms. Wallace by letter that her intermittent FMLA was approved retroactively to January 29, 2016.

46. Ms. Wallace had already been placed on "paid administrative leave" as of February 8, 2016.

47. Ms. Wallace was still capable of working at that time, but had needed the intermittent leave to attend multiple doctor's appointments.

48. Ms. Wallace heard nothing regarding her status for quite some time.

49. Ms. Wallace was informed by Marie Walsh in Ethics that "two of the three" ethics charges falsely made by Dave Sellers had been unsubstantiated.

50. Ms. Wallace made numerous attempts from April 2016 to June 2016 to find out her status from Lockheed.

51. Mr. Cheeks contacted Ms. Wallace to tell her that he did not know what was going on and was only allowed to collect the hours she spent at doctor appointments.

52. On April 27, 2016, Ms. Wallace received notice from Lockheed that, effective May 2, 2016, her paid leave was now going to be "unpaid" leave for "non-FMLA" time, until work became available for her.

53. Upon information and belief, there was plenty of work available and Ms. Wallace's customers were already asking when she would be returning.

54. In that same month, Ms. Wallace learned that someone at Lockheed had placed false, derogatory remarks –blaming her for the failure of two managers - against her security clearance back in March 2016.

55. Upon information and belief that person was Rickey Romanini, acting at Dave Sellers' instigation.

56. Mr. Cheeks and Ms. Minus encouraged her to use up her FMLA intermittent hours for 2016, so that they could tell her the results of the investigation and/or discipline decision after she had exhausted her leave. They both said they would not talk to her while she was on FMLA leave.

57. Ms. Wallace was able to work with the intermittent leave for all of 2016 except for



six weeks beginning June 2016.

58. In June 2016, Ms. Wallace's medical provider requested six weeks of short term disability for Ms. Wallace.

59. That request was approved.

60. On or about July 11, 2016, Ms. Wallace submitted a "return to work" clearance letter from her provider.

61. On or about July 12, 2016, Ms. Minus in HR emailed Ms. Wallace and instructed her not to report to work.

62. Upon information and belief, around that same time, Ms. Minus informed Lockheed's Disability Center that Ms. Wallace was a "full-time active employee."

63. Ms. Wallace next called payroll to find out why she wasn't being paid if she was a "full-time active employee" and they instructed her to call Ethics again.

64. Ethics told Ms. Wallace repeatedly they would investigate but never came back with a final answer.

65. In August 2016, Tony Pederson (a Lockheed corporate investigator) asked Ms. Wallace to participate in a corporate-wide investigation that included issues involving Dave Sellers.

66. Ms. Wallace cooperated fully and reported the issues with Dave Sellers and her FMLA concerns.

67. In November 2016, Ms. Wallace sent a letter to Lockheed's CEO and included, *inter alia,* her belief that she was being retaliated against for taking FMLA, which retaliation included being sent home indefinitely without pay and having her security clearance affected negatively.

68. On December 20, 2016, Lockheed notified Ms. Wallace through Craig Cash that the CEO had received her letter and that all issues had been or were being dealt with.

69. On or about December 21, 2016, Ms. Wallace responded to Mr. Cash and asked why the company placed false, derogatory, information on her clearance in March of 2016 after reporting FMLA violations and why Lockheed stated that she was a full time employee (non-adverse) to a federal government agency and also reported to her security clearance agency on



1 December 1, 2016 that she has been terminated.

70. Lockheed made no response.

71. Ms. Wallace's doctor re-certified Ms. Wallace for intermittent FMLA leave in January 2017.

72. Lockheed's Disability Center denied the request, stating that Ms. Wallace had not worked the requisite 1,250 hours the previous year.

73. This was only true because Lockheed had actively prevented Ms. Wallace from working.

74. In April 2017, Lockheed terminated Ms. Wallace without explanation, citing an unspecified "discipline."

75. Ms. Wallace was not afforded the appeals process that many of her co-workers had been afforded in the disciplinary process.

76. Many of Ms. Wallace's personal belongings were collected and not returned by Lockheed, despite multiple requests.

77. Ms. Wallace has had difficulty obtaining new employment because of the false report placed by Lockheed against her security clearance.

78. All conditions precedent necessary to the filing of this lawsuit have been performed or have occurred.

**FIRST CAUSE OF ACTION – FMLA INTERFERENCE**

79. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

80. Plaintiff applied for and received FMLA leave during her employment with Defendant for her own serious health condition.

81. As alleged above, Plaintiff had requested intermittent FMLA leave, and was not allowed to work, or returned to her same or equivalent position, but was instead terminated by Defendants.

82. It is unlawful for Defendant to make any decision to terminate Plaintiff for exercising her rights under the FMLA.

83. Furthermore, Defendant used Plaintiff's exercise of her leave rights under the



FMLA as a negative factor in making the decision to terminate her. *Bachelder v. American West Airlines, Inc.,* 259 F.3d 1112 (9th Cir. 2001).

84. The Defendant's actions in violating the FMLA were willful, unreasonable, and without good faith.

85. Thus, in addition to the amount of any lost compensation, benefits and other monetary damages owed, Plaintiff is entitled to recover from the Defendant an additional equal amount as liquidated damages.

### SECOND CAUSE OF ACTION – FMLA RETALIATION

86. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

87. Plaintiff engaged in the protected activity of opposing Lockheed's violation of her FMLA rights on multiple occasions.

88. Defendant Lockheed Martin had knowledge of Plaintiff's protected activity.

89. She experienced retaliation as a result of her protected activity.

90. There was a causal connection between her protected activity under the FMLA, and Lockheed's retaliation.

91. The Defendant's actions were willful, unreasonable, and without good faith.

92. As a direct and proximate result of Defendant's conduct, which violates the anti-retaliation provisions of the FMLA, Plaintiff is entitled to recover from the Defendant any lost compensation, benefits and other monetary damages owed, plus an additional equal amount as liquidated damages.

### DEMAND FOR TRIAL BY JURY

93. Plaintiff hereby demands a trial by jury, pursuant to the U.S. Constitution, Seventh Amendment and Federal Rules of Civil Procedure Rule 38(a, b).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A. Declaring that the acts and practices complained of herein are in violation of federal law;

B. Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect



Plaintiff's employment or employment opportunities, including the return of her belongings and the removal of the false remarks on her security clearance;

C. Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory and retaliatory treatment of her, and make her whole for all earnings she would have received but for Defendant's discriminatory and retaliatory treatment, including, but not limited to, back pay, front pay, pension, lost benefits, and other monetary damages owed;

D. Equitable relief (including an order prohibiting future discrimination or retaliation, the return of her belongings, and the cleaning up of her security clearance);

E. Awarding appropriate damages under the FMLA in an amount to be determined by the jury;

F. Awarding liquidated damages for Defendant's actions taken without good faith;

G. Awarding Plaintiff pre- and post-judgment interest, the costs of this action, and reasonable attorneys' fees as provided by the statutes providing the causes of action cited herein; and

H. For such other and further relief as the Court deems just and proper.

Respectfully submitted on this 9th day of February, 2018,

JOSHUA CARDEN LAW FIRM, P.C.

By: s/Joshua W. Carden
Joshua W. Carden
*Attorney for Plaintiff*
*Stacy Wallace*

