Stacy M. Gabriel (#015071)
Andrew S. Ashworth (#016356)
GABRIEL & ASHWORTH, P.L.L.C.
10105 E. Via Linda, Suite 103, No. 392
Scottsdale, Arizona 85258
(480) 368-2790
stacy@gabrielashworth.com

Rosemary Alito (*pro hac vice*)
Meghan Meade (*pro hac vice*)
Laura Scully (*pro hac vice*)
K&L GATES LLP
One Newark Center, Tenth Floor
Newark, New Jersey 07102
(973) 848-4000
ralito@klgates.com
mmeade@klgates.com

Counsel for Defendant Lockheed Martin Corporation

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy Wallace,<br><br>    Plaintiff,<br><br> vs.<br><br>Lockheed Martin Corporation,<br><br>    Defendant. | Case No. 2:18-cv-00463<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Oral Argument Requested |

Plaintiff Stacy Wallace admitted in this action she engaged in a physical, amorous relationship with her direct supervisor for months and a consensual romantic relationship with one of Defendant Lockheed Martin Corporation's ("LMC's") customers, a Lieutenant Colonel in the U.S. Air Force, whom she at first falsely accused of raping her. Her employment as a manager with LMC ultimately ended because of this irresponsible, dishonest behavior wholly

unbefitting of someone in her position, which even Plaintiff conceded violated LMC's leadership requirements. Her acknowledgment that she engaged in the misconduct that gave rise to her failure to be reinstated to her manager role completely forecloses her claims in this action under the Family and Medical Leave Act ("FMLA").

After LMC launched an investigation into Plaintiff's reckless behavior, she requested and used FMLA leave, which she exhausted over the course of nearly a year. LMC's investigation substantiated the allegations as to her serious misconduct. In early March 2016, members of a committee at LMC determined that, based on the investigation findings, Plaintiff could not be returned to her leadership position at LMC.

Months after LMC's committee had already recommended that Plaintiff not be reinstated to her leadership role, in June 2016, Plaintiff started to raise questions about her FMLA leave, which she took on an intermittent basis from January 29, 2016 to January 28, 2017. As her alleged protected activity came after LMC's disciplinary decision, LMC could not possibly have retaliated against her. While Plaintiff's admitted transgressions undermined her ability to serve in any leadership capacity at LMC at the location where she worked, after she exhausted her FMLA leave LMC offered her the opportunity to apply for a non-managerial position elsewhere. She failed to avail herself of this offer, and her employment was terminated in April 2017 as a result of this choice, not on account of her FMLA leave or any FMLA-related protected activity.

For the reasons set forth more fully below, LMC respectfully moves for summary judgment dismissal of Plaintiff's claims in this action, for interference with her rights under the FMLA and retaliation for exercising those rights.

## 1. Undisputed Facts

### A. *Plaintiff's Job History*

LMC employed Plaintiff as a Computer Systems Security Analysis Manager at Luke Air Force Base ("Luke") from 2014 until April 2017 (para. 1).[1] In this capacity, Plaintiff was responsible for securing the F-35 system and its data, and required a secret security clearance to perform her job duties (para. 2). Several LMC employees reported to Plaintiff (para. 3). Plaintiff directly reported to Darin Crowley and in turn to Mark Cheeks (para. 4). While she had a dotted-line reporting relationship to David Sellers, Sellers did not have the authority to hire or fire Plaintiff and was not in her chain of command (para. 5). In addition, Plaintiff directly reported to LMC's customers, including the U.S. government (para. 6).

### B. *Plaintiff's Violation of Company Policies*

On January 27, 2016, the LMC Ethics Department ("Ethics") received a complaint from Sellers that, among other allegations, Plaintiff and her direct supervisor, Crowley, were engaged in a consensual romantic relationship, and that Plaintiff and a civilian U.S. Air Force employee Lieutenant Colonel had been or were engaged in a personal if not romantic relationship (para. 7). Plaintiff was subsequently placed on paid administrative leave pending the investigation (para.

---

[1] "Para." refers to the paragraphs in the Statement of Facts in Support of Defendant's Motion for Summary Judgment.

8). Meanwhile, on January 26, 2016, Crowley resigned from his employment with LMC (para. 9).

Plaintiff admitted at her deposition that she engaged in an inappropriate relationship with her supervisor (para. 10). She conceded that she had a "personal relationship" with him from late November 2015 to January 2016 (para. 11). She acknowledged that she loved him (para. 12). Plaintiff further admitted that her relationship with Crowley became physical while he was still her supervisor (para. 13). She conceded that having Crowley as her "'boss, friend, part-time more than friend'" when he was her supervisor violated LMC's full spectrum leadership requirements (para. 14).

She admitted that they had a "close, personal relationship evident in late September/October 2015 time frame based on text messages," including many "say[ing] 'miss you' and 'love you'" and one mentioning they "they agreed they were 'endless lovers,'" and including "early morning and late night exchanges" (para. 15). For example, Plaintiff texted Crowley, "'You are always on my mind.'" (para. 16). Plaintiff admitted replying "Yes. I am" when Crowley texted her, "Are you lustful" (para. 17)? When Crowley texted her "'Pool or hot tub next week,'" she responded, "'Both.'" According to her, this exchange was because "I need water. I have physical pain. I need a lot of water. And so Darin [Crowley]'s suggestion to me often was: Go walk laps. Go swim laps" (para. 18).

In response to Crowley texting Plaintiff, "'You come to my being. It is soulful. Connected. Mind, body and spirit,'" she texted, "Yes." Shortly thereafter he texted: "'I want to bite you'" (para. 19). Plaintiff maintained these

communications could have been a song lyric or "could just be speaking of being a human being on this earth" (para. 19).

She did not deny that Crowley texted her, "'You need to get home. I am having a party in my pants and you're invited,'" to which she replied, "'LOL. Just saw your texts" (para. 20). Regarding sleeping with Crowley, she explained, "if I slept in the same bed with him, then it was not any physical, romantic way," but also admitted that their relationship "went from friendship to something more and . . . it crossed the line" and was more than a boss-subordinate relationship (para. 21). Crowley himself likewise admitted that he had a romantic relationship and affair with her, which involved kissing, hugging, overnight visits, and sleeping in the same bed (para. 22).

Plaintiff also told LMC that she had a consensual romantic relationship with one of LMC's customers, a Lieutenant Colonel in the U.S. Air Force, whom she at first falsely accused of raping her (para. 23). She acknowledged that her representation that the Lieutenant Colonel had raped her was a very serious criminal allegation, and this representation was a lie (para. 24). According to Plaintiff, she made this lie because Sellers and another LMC employee pressured her and "I wanted to appease Dave [Sellers]. I don't really know what it was for. I was hoping that I wouldn't be around for whatever it was for" (para. 25). In the course of doing so, Plaintiff admitted, "I said a lot of things that were not true . . . I said a lot of things in this that were not true," referring to her conversation with Sellers about the Lieutenant Colonel and the Lieutenant Colonel's alleged efforts

to discourage her from reporting the Lieutenant Colonel's rape of her, which never actually occurred (para. 26).

Ethics conducted a thorough investigation, which concluded on February 16, 2016 (para. 27). The LMC employee conducting the investigation, Marie Walsh, was not involved in the approval or provision of Plaintiff's FMLA leave benefits, which were administered by the Lockheed Martin Leave and Disability Center, managed by third-party administrator Sedgwick Claims Management Services, Inc (para. 28). Ethics found that the allegations about Plaintiff's relationships with Crowley and the Lieutenant Colonel were substantiated and that Plaintiff had violated company policies (para. 29). Ethics also found the charge that she used improper language substantiated, noting that Plaintiff "admitted making comments about 'blowing' someone." (para. 29). Plaintiff was advised of the investigation conclusions against her on February 26, 2016 (para. 30).

Ethics presented its conclusions to LMC's Administrative Review Committee ("ARC") for determination as to what, if any, discipline the investigation findings warranted (para. 31). In early March 2016, the ARC recommended Plaintiff be terminated from her position (para. 32).

*C. Plaintiff's FMLA Usage*

At the time of the ARC decision, Plaintiff was on intermittent FMLA leave retroactive to January 29, 2016 (para. 33). So as to avoid even the suggestion of interference with Plaintiff's enjoyment of her FMLA benefits, LMC postponed Plaintiff's termination from her position until after she had exhausted her FMLA leave (para. 34). LMC told Plaintiff that she would be informed of any discipline

she would face as an outgrowth of the investigation after she used up all of her FMLA leave or no longer needed FMLA leave (para. 35).

Plaintiff first requested FMLA leave on January 29, 2016, which she sought for "anxiety and depression" (para. 36). She was requested to complete and return a medical certification form (para. 37). However, the form Plaintiff submitted was insufficient, so she was asked to submit complete paperwork in order to process her FMLA request (para. 38). On March 28, 2016, Plaintiff's request for intermittent FMLA leave was retroactively approved for the period January 29, 2016 through July 28, 2016 (para. 39). Plaintiff was paid during this period of FMLA leave (para. 40). Plaintiff subsequently requested an extension of her intermittent FMLA leave, which was granted through January 28, 2017 (para. 41).

Meanwhile, during the summer of 2016, while taking her intermittent FMLA leave (para. 41), Plaintiff repeatedly asked about her return to work (paras. 43-44), despite the fact that she was previously told LMC would not discuss discipline with her while she was on FMLA leave (para. 35). On January 20, 2017, Plaintiff sought another extension of her FMLA leave (para. 42). By letter dated January 23, 2017, she was advised that she did not qualify for further leave because she did not meet the FMLA's 1,250 hours requirement, having only worked 899.00 hours within the 12-month period preceding the leave sought (para. 42). On February 13, 2017, she emailed Cheeks, Senior Manager, about the denial of her extended FMLA leave and asked what could be done about her ineligibility (para. 45). On April 13, 2017, Plaintiff's then-attorney sent a letter to LMC's

CEO, asserting, among other claims, that her FMLA rights were violated (para. 46).

   D. *Plaintiff's Employment is Terminated After She Fails to Pursue a Non-Management Position at LMC*

   On March 15, 2017, after Plaintiff's FMLA leave benefits had been completely exhausted, LMC invited Plaintiff to apply to any open, non-leadership positions at locations other than Luke by April 15, 2017 and explained that, if Plaintiff did not find a new position by April 15, she would be administratively separated (para. 47). Plaintiff chose not to pursue any such opportunities. LMC thus terminated her employment effective April 19, 2017 (para. 48).[2]

   **2.  Standard on Motion for Summary Judgment**

   A court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be 'such that a reasonable jury could return a verdict for the nonmoving party.' *Id.* at 248." *Agilysys, Inc. v. Vipond*, No. 04-2023-PHX-DGC, 2006 WL 2620103, at *2 (D. Ariz. Sept. 13, 2006) (citations omitted). "Summary judgment may be entered against a party who 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

---

[2] Plaintiff brought two charges before the U.S. Equal Employment Opportunity Commission, both of which resulted in findings of no probable cause (para. 49).

on which that party will bear the burden of proof at trial.' *Celotex*, 477 U.S. at 322." *Id.* LMC satisfies this standard and summary judgment is therefore appropriate.

### 3. Plaintiff's FMLA Interference Claim Is Meritless

Having admitted to engaging in the serious misconduct predating her FMLA leave that gave rise to the end of her employment, Plaintiff's FMLA interference claim is unviable. To state a claim for interference with FMLA rights, Plaintiff must establish by a preponderance of the evidence that she (1) took protected leave; (2) suffered an adverse employment action; and (3) the adverse action was causally related to her FMLA leave. *Foraker v. Apollo Group, Inc.*, 427 F. Supp. 2d 936, 941 (D. Ariz. Apr. 12, 2006).[3] Plaintiff cannot demonstrate the third requisite element. To establish causation, she must show that the "'taking of

---

[3] Alternatively, a plaintiff "may show interference by presenting evidence that the employer pressured the employee to reduce leave time or misinformed an employee as to his FMLA rights, 'thus discouraging her from using FMLA leave.'" *Cheeks v. Gen. Dynamics*, No. CV-12-01543-PHX-JAT, 2014 WL 11514328, at *1 (D. Ariz. Nov. 18, 2014) (citation omitted). Here, this approach is unavailable to Plaintiff, as she actually was permitted to use all of the FMLA leave to which she was entitled (paras. 39-42), even though LMC had grounds to terminate her employment earlier based on the findings of misconduct reviewed by the ARC (para. 32). Her FMLA benefits only ended because she did not work the required hours to be eligible for further leave (para. 42). The cessation of her FMLA benefits also cannot be the basis of an interference claim. *See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (noting that demonstrations plaintiff was "eligible for the FMLA's protections" as well as "entitled to leave under the FMLA" are among the elements required to establish a claim for FMLA interference). In particular, failure to work the necessary hours to be eligible for FMLA leave forecloses an FMLA interference claim. *Kohama v. McCabe*, 197 F. App'x 535, 537 (9th Cir. 2006) (affirming summary judgment dismissal of FMLA interference claim for, among other reasons, "[t]here is no evidence in the record that [plaintiff] worked the requisite number of hours to be an eligible employee . . . .").

FMLA-protected leave constituted a negative factor in the decision to terminate [her].'" *Buckman v. MCI World Com*, No. CV-06-2005-PHX-DGCJJ, 2008 WL 928000, at *3 (D. Ariz. Apr. 4, 2008), aff'd sub nom. *Buckman v. MCI World Com Inc.*, 374 F. App'x 719 (9th Cir. 2010) (citations omitted). Moreover, as this Court has explained:

> [t]he right to reinstatement under the Act is not limitless. The FMLA does not entitle the employee to any rights, benefits, or positions he or she would not have been entitled to had he or she not taken leave. It simply guarantees that an employee's taking leave will not result in adverse employment actions. . . . Once a plaintiff has shown that she has not been reinstated to her previous position, the burden shifts to the employer 'to show that [it] had a legitimate reason to deny an employee reinstatement.'

*Fox v. Primary Fin. Servs. LLC*, No. CV-13-00116-PHX-DGC, 2014 WL 814969, at *2 (D. Ariz. Mar. 3, 2014) (citations omitted). *See also Sanders v. City of Newport*, 657 F.3d 772, 778–79 (9th Cir. 2011) ("All the circuits that have considered the issue have relied on DOL regulations to hold that the FMLA provides an employee with only a limited right to reinstatement.") (citations omitted); *Fleming v. IASIS Healthcare Corp.*, 151 F. Supp. 3d 1043, 1055 (D. Ariz. 2015) (rejecting the argument that if employee requests FMLA leave, employer, regardless of employee misconduct, must either retain employee or face trial for interference with FMLA rights).

In this case, LMC had a legitimate reason for not restoring Plaintiff to her position at Luke as Computer Systems Security Analysis Manager with several direct reports; namely, her admitted inappropriate relationship with her supervisor, false accusation of rape against one of LMC's clients and consensual romantic

relationship with this client, a Lieutenant Colonel in the U.S. Air Force, in violation of not only common sense but also LMC's policies (paras. 10-15, 21-26, 29-32). Her demonstrated failure to exercise basic leadership skills by choosing to compromise the team's overall success in favor of her own personal and/or romantic relationships wholly undermined her qualifications to hold any leadership position, especially at Luke where her own actions damaged her reputation and trust among coworkers. The reason for not reinstating her is entirely unrelated to Plaintiff's FMLA leave. Notably, the reason for not restoring Plaintiff is also uncontested. She herself admitted the truth of the circumstances underlying the decision not to reinstate her (paras. 10-11, 13-15, 21, 23-26). Ultimately, her employment was terminated not because she took FMLA leave, but because she failed to secure a non-leadership position at a location other than Luke (paras. 47-48). As such, her tenure as Computer Systems Security Analysis Manager and employment at LMC ended for legitimate reasons, and her FMLA interference claim fails.

Relevant case law further supports this conclusion. The Ninth Circuit case of *Zsenyuk v. City of Carson* is especially instructive. Zsenyuk asserted a dozen alleged adverse actions and supplied no direct evidence of causation except for temporal proximity between his FMLA leave and the first three supposed adverse actions. 99 F. App'x 794, 796 (9th Cir. 2004). All of these actions occurred after his return from FMLA leave, but were part of an investigation into his behavior that started before he asked for and took FMLA leave. In affirming the lower court's grant of summary judgment to the employer, the court concluded:

"Zsenyuk has offered no evidence that the conduct of and result of the investigation were influenced by his exercise of rights under the FMLA, and his assertion of temporal proximity is undermined—if not nullified—by the fact that the investigation pre-dated his leave." *Id.* This case is no different. As in *Zsenyuk*, here, the investigation into Plaintiff's conduct was initiated before she applied for and took FMLA leave. The investigation commenced on January 27, 2016 (para. 7), and Plaintiff requested leave days later on January 29, 2016 (para. 36). The conduct giving rise to the investigation likewise took place at least months before Plaintiff began her FMLA leave (para. 15). Accordingly, the same result is warranted in this case: dismissal due to lack of the requisite causality.

Additionally, in *Valtierra v. Medtronic Inc.*, the district court dismissed a facility specialist's FMLA claim on summary judgment where—like here—the plaintiff admitted engaging in the misconduct for which he lost his job. In *Valtierra*, the court reasoned that "no reasonable juror could conclude but that [the employer] discharged Valtierra for misconduct and violation of company policies after Valtierra admitted that he signed off on 12 [preventative maintenance items] as completed yet not having performed the work. . . even if Valtierra had already applied to [the company] for prospective FMLA leave (which Valtierra had not done) . . . ." *Valtierra v. Medtronic Inc.*, 232 F. Supp. 3d 1117, 1128 (D. Ariz. 2017). Thus, regardless of timing, Plaintiff's admissions that she had an inappropriate relationship with her supervisor and falsely accused her customer of rape when in fact they had a consensual romantic relationship entirely undercut her

FMLA claim. Such conduct was a legitimate reason for not restoring Plaintiff to her job and her FMLA interference claim therefore fails.

**4.  Plaintiff's FMLA Retaliation Claim Is Equally Unavailing**

Plaintiff's FMLA retaliation claim is equally unsustainable, as any protected activity occurred well after the decision had already been made that Plaintiff could not remain in her leadership position. In the Ninth Circuit, courts construe FMLA retaliation claims as prohibiting employers from discriminating "against any individual for opposing any practice made unlawful by the [FMLA]." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir.2001).

There could be no causal connection between any complaints Plaintiff made related to her FMLA and her termination. Significantly, the ARC determined that termination from her position was appropriate discipline in early March 2016, (para. 32), which undisputedly predated any opposition Plaintiff may have expressed on how LMC handled her FMLA leave. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (assessing a retaliation claim under Title VII, court held an employer "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality"). Plaintiff only raised questions about her FMLA leave starting in June 2016, and she did not make a formal complaint until April 2017 (paras. 43-46). Even if these communications were protected activity, they could not have influenced a decision already made months prior in March 2016 (para. 32). Also, in March 2017, months after Plaintiff started questioning LMC's administration of her leave, LMC invited Plaintiff to apply for a non-management position outside Luke (para. 47). If LMC

had a retaliatory motive as Plaintiff alleges, it would not have offered her this opportunity, but instead would have summarily terminated her employment. Accordingly, any alleged protected activity on Plaintiff's part played no part in LMC's decision to terminate her employment, and her FMLA retaliation claim is meritless.

## CONCLUSION

Lockheed Martin Corporation respectfully requests that this Court enter summary judgment in its favor and against Plaintiff, and that this Court enter such other and further relief as it deems just and proper.

Dated: March 1, 2019

*Counsel for Defendant*
*Lockheed Martin Corporation*

 /s/ Rosemary Alito
_____
Rosemary Alito
Meghan Meade
Laura Scully
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, NJ 07102
Rosemary.alito@klgates.com
Meghan.meade@klgates.com
Laura.scully@klgates.com