# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy Wallace,<br><br>                Plaintiff,<br><br>v.<br><br>Lockheed Martin Corporation,<br><br>                Defendant. | No. CV-18-00463-PHX-DGC<br><br>**ORDER** |

Defendant Lockheed Martin Corporation ("LMC") moves for summary judgment on Plaintiff Stacy Wallace's claim that LMC unlawfully interfered with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. Ch. 28. Doc. 19. Wallace filed a response (Doc. 25), and LMC replied (Doc. 28). The Court concludes that oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998). For the reasons set forth below, the Court will grant in part and deny in part LMC's motion.

**I.    Background.**

The following facts are undisputed unless noted otherwise.

Wallace worked for Defendant at Luke Air Force Base as a Computer Systems Security Analysis Manager from 2014 until April 2017. Doc. 20 at ¶ 1. Her direct supervisor was Darin Crowley. Doc. 20 at ¶ 4. His supervisor was Mark Cheeks. *Id*.

David Sellers is a "higher-up" in LMC's security division, but the parties dispute whether Sellers was in Wallace's chain of command. Doc. 20 at ¶ 5; Doc. 23 at 5.

In late 2015, after receiving a cancer diagnosis, Wallace told Crowley and Carolyn Jones, a human resources supervisor, that she needed to take medical leave. Doc. 23 at ¶¶ 50-51. Jones suggested intermittent-FMLA leave as "the best of both worlds." *Id*. Crowley asked Wallace to delay her leave as long as she could. Doc. 23 at ¶¶ 52-53.

Around the same time, Wallace informed Sellers that she planned to take leave. Doc. 23 at ¶ 53. According to Wallace, Sellers started mocking her health problems and openly stating he wanted to replace her with Adam Young, another LMC employee. *Id*. On January 26, 2016, Wallace threatened to report Sellers to the LMC Ethics Department if he did not stop this behavior. Doc. 23-1 at ¶ 16. The next day, Sellers reported Wallace to the Ethics Department for violating company policies, and the Ethics Department initiated an investigation. Doc. 20 at ¶ 7; Doc 23 at ¶ 7.

Sellers' ethics report alleged Wallace had engaged in romantic relationships with Crowley and an LMC client, and had falsely accused the client of rape. Doc. 20 at ¶ 7. Wallace denies that she made the rape accusation, stating that she referred to rape in only one conversation with a human resources investigator, but quickly confessed that she lied because Sellers had pressured her to make the allegation. Doc. 23 at ¶ 24.

On January 27, 2016, Wallace officially requested leave under the FMLA for anxiety and depression (Doc. 20 at ¶ 36), which she alleges was caused by her cancer diagnosis (Doc. 23-1 at ¶ 22). She received FMLA paperwork on February 1, 2016. Doc. 23 at ¶ 54.

On February 8, 2016, Wallace made a verbal request for FMLA leave to Jones and Danielle Minus, another human resources employee. Doc. 23 at ¶ 54. Minus told Wallace she could not take FMLA leave, but that she was placing Wallace on administrative leave for her safety. Doc. 23 at ¶ 55. Later that month, Minus told Wallace that her prior determination was mistaken and that Wallace was, in-fact, eligible for FMLA leave. Doc. 23-1 at ¶ 33. On February 9, 2016, Cheeks, Crowley's supervisor, announced that

Adam Young would replace Wallace while she was on a "non-adverse" leave of absence. Doc. 23 at ¶ 56.

In early March, the Ethics Department found that the allegations regarding Wallace's romantic relationships with Crowley and the LMC client were true and violated LMC policy. Doc. 23 ¶ 29. The Ethics Department presented its conclusions to LMC's Administrative Review Committee ("ARC") to determine whether the misconduct warranted disciplinary action. Doc. 20 at ¶ 29.

LMC alleges that ARC decided to terminate Wallace from her original position. Doc. 20 at ¶¶ 31-32. Wallace disputes that this was the ARC's decision because a letter from LMC's general counsel to Congressman Trent Franks explained that Wallace would be allowed to seek a new position within the company or be terminated. Doc. 23 at ¶ 31.

On March 3, 2016, Wallace's previous counsel sent an evidence preservation letter to LMC specifically referencing potential FMLA claims. Doc. 23 at ¶ 53. Six days later, LMC issued a report against Wallace's security clearance. Doc. 23 at ¶ 60.

On March 28, 2016, LMC approved Wallace's request for intermittent FMLA leave, through July 28, 2016. Doc. 23 at ¶ 39. LMC retroactively designated the leave to January 29, 2016, the date Wallace made her first formal request for leave. *Id*. On April 27, 2016, Minus told Wallace that she would no longer receive payments for non-FMLA leave time, effective May 2, 2016. Doc. 23 at ¶ 62.

On June 21, 2016, Wallace asked human resources about not receiving a reinstatement date. Doc. 20 at ¶ 43. On July 8, 2016, Wallace's counsel sent another letter to Minus notifying her of FMLA violations and requesting that Wallace be reinstated to prevent further violations. Doc. 23 at ¶ 66. On July 12, 2016, Minus told Wallace not to report to work because no work was available for her. Doc. 23 at ¶ 67. She claimed Wallace's functions had been reassigned to others in the department. *Id*. Wallace disputes that work was not available. Doc. 23 at ¶ 64. She alleges that at least one customer had requested her return to work as soon as possible in a June 22 email to Mark Cheeks. Doc. 23 at ¶ 64. The email stated: "the IA team is pretty busy and [Wallace's] presence

would alleviate the managerial workload that's currently being shared by others." Doc. 23-2 at 36.

On July 26, 2016, Minus informed LMC's disability center that Wallace had been "returned back to work." Doc. 20 at ¶ 41. Wallace asked Minus to clarify this change given Minus's prior instruction that Wallace not report for work. *Id*. Minus explained that Wallace's short-term disability leave had expired and she therefore was back to her original work arrangement of reporting to work only upon expiration of all FMLA leave. Doc. 28 at 7 (citing Doc. 23-2 at 47, Ex. 13). Wallace subsequently requested an extension of her FMLA leave, which was granted through January 28, 2017. Doc. 20 at ¶ 41.

On August 15, 2016, Wallace complained again about not being reinstated. Doc. 20 at ¶ 44. On November 21, 2016, she raised FMLA complaints to corporate investigators, and did the same a week later in a letter to LMC's CEO. Doc. 23 at ¶¶ 70, 73. On December 28, 2016, Sellers informed customers that Wallace's job had been changed and she was "no longer supporting a classified contract" while on intermittent-FMLA leave. Doc. 23 at ¶ 73.

On January 20, 2017, Wallace sought another extension of her FMLA leave, but was denied because she did not meet the FMLA's 1,250 hours requirement, having worked only 899 hours during the preceding 12-month period. Doc. 20 at ¶ 42. Wallace alleges she did not qualify because LMC had refused her requests for reinstatement. Doc. 25 at 8.

By March 15, 2017, Wallace had exhausted her FMLA leave benefits. Doc. 20 at ¶ 47. LMC invited Wallace to apply to any open, non-leadership positions at locations other than Luke Air Force Base by April 15, 2017, or face "administrative separation." *Id*. Wallace did not apply and was terminated. *Id*

**II. Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence,

viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Analysis.**

The FMLA establishes the "minimum labor standard for leave" in the United States. *Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). Employees covered by the FMLA are entitled to take up to 12 weeks of leave each year for family or medical reasons and must be reinstated to their original or an equivalent position on return. 29 U.S.C. §§ 2612(a), 2614(a).

**A. Interference Claim.**

It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. *Id.*; § 2615(a)(1). Generally, any action by an employer that deters an employee from participating in FMLA-protected activities qualifies as an interference with the employee's FMLA rights. *Bachelder*, 259 F.3d at 1124.

The Department of Labor interprets § 2615(a)(1) as prohibiting employers from refusing to authorize leave, discouraging an employee from using such leave, or using an employee's taking of FMLA leave "as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c). Thus, an employee will prevail on a claim for unlawful interference with FMLA rights if she shows that (1) she was eligible for FMLA protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to

take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Escriba v. Foster Poultry Farms, Inc*., 743 F.3d 1236, 1243 (9th Cir. 2014).

Wallace claims that LMC interfered with her FMLA rights by refusing to reinstate her, discouraging her from taking leave, failing to provide timely notice of eligibility, failing to properly designate her leave, using her leave as a negative factor in employment decisions, changing the terms of her employment while she was on leave, and refusing to communicate with her regarding her employment status or pay her for non-FMLA time. Doc. 25 at 8. LMC does not dispute that Wallace can establish the first four elements of her interference claim, but argues she cannot show that she was denied a benefit to which she was entitled. Doc. 19 at 11; Doc. 28 at 2.

### 1. Failure to Reinstate and Discharge.

Wallace claims LMC declined to reinstate her in violation of the FMLA. "Evidence that an employer failed to reinstate an employee who was out on FMLA leave to her original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights." *Sanders v. City of Newport*, 657 F.3d 772, 780 (9th Cir. 2011). Once a plaintiff has made this prima facie showing, the burden shifts to the employer to show "a legitimate reason" for the denial. *Id*; *see also* 29 C.F.R § 825.216 ("An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.").

LMC acknowledges that it declined to reinstate Wallace to her original position and eventually discharged her, but argues that she no longer qualified for her original position because she violated company policy before taking leave. Doc. 19 at 12. Specifically, LMC asserts that Wallace violated company policy when she had an inappropriate relationship with her direct supervisor, had a consensual romantic relationship with a client, and falsely accused the client of rape. Doc. 19 at 11-12.

For support, LMC cites *Valtierra v. Medtronic Inc.*, 232 F. Supp. 3d 1117, 1128 (D. Ariz. Feb. 3, 2017), in which the court granted summary judgment on an FMLA interference claim. The plaintiff claimed he was discharged because he was vocal about

an upcoming surgery and his need for leave six months after returning from a separate FMLA leave. *Id.* at 1128. The defendant justified the termination as resulting from misconduct that occurred before the plaintiff took his first FMLA leave and an investigation after he returned that substantiated his misconduct. *Id.* at 1128. Temporal proximity between leave and an adverse employment action was not sufficient to withstand summary judgment where there was a finding of misconduct by the employee. *Id.*[1]

Although Wallace concedes that the ethics investigation found she had violated LMC policies (Doc. 23 at ¶¶ 21-25), she argues that this justification for her termination was pretextual because of internal inconsistencies (Doc. 25 at 16). But Wallace does not identify any inconsistencies with respect to the first two justifications LMC offers – that she had inappropriate relationships with her supervisor and a client.[2] As to the third justification, she alleges that she never made the rape accusation "except in [a] single conversation with the investigator, to whom she quickly confessed that the allegation was false and that she was pressured into making it by Dave Sellers." Doc. 25 at 14-16. Even if Wallace immediately confessed that the accusation was false, it does not change the fact that she made a false allegation against a client.

Wallace's temporal proximity arguments are also unavailing. Although the ethics investigation started shortly after Wallace informed supervisors of her need for leave, she presents no evidence that the investigation's misconduct findings were associated with her leave request. Instead, she alleges the investigation started because she threatened to report Sellers to the Ethics Department for harassing her about taking leave (Doc. 23-1 at ¶¶ 16-19), and Sellers beat her to the punch by reporting her misconduct the next day (*id*; Doc. 23 at ¶ 7). While this may be evidence that Sellers retaliated against Wallace for

---

[1] LMC also cites *Zsenyuk v. City of Carson*, 99 F. App'x 794, 796 (9th Cir. 2004), which affirmed a grant of summary judgment on an FMLA retaliation claim. That case, however, cannot be cited under Ninth Circuit rules. *See* U.S.Ct. of App. 9th Cir. Rule 36-3(c); *see also* Fed. R. App. Proc. 32.1.

[2] In her Controverting Statement of Facts, Wallace objects to LMC's characterization of her affair with Crowley, but admits to having had an affair. Doc. 23 at ¶ 22.

opposing his behavior, it does not change the fact that the Ethics Department conducted an investigation and found that Wallace committed ethical violations, nor the fact that Wallace admits the conduct underlying those violations. It does not, therefore, show that LMC's reason for refusing to reinstate her was pretextual. Doc. 23 at ¶ 53.

Wallace also fails to articulate any legal argument as to admissibility of the investigation's findings.[3] Courts need not consider matters "that are not specifically and distinctly argued" in a party's brief, *Miller v. Fairchild Indust., Inc*., 797 F.2d 727, 738 (9th Cir. 1986), and may refuse to address claims argued only in passing, *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n. 4 (9th Cir. 2010).

The Court will grant summary judgment on Wallace's claims that LMC interfered with her leave by failing to reinstate her to the same or an equivalent position.

### 2. **Discouraging Leave.**

An employee need not "expressly assert rights under the FMLA or even mention the FMLA" to invoke its protections. *Bachelder*, 259 F.3d at 1130. She need only state that leave is needed for a qualifying reason. *Id*. Thus, the timing of Wallace's formal FMLA request on January 29, 2016, is irrelevant given the evidence that she raised the prospect of a health-related leave before the end of 2015. Similarly irrelevant are Crowley's allegedly good intentions when he requested that Wallace delay her FMLA leave. *Sanders*, 657 F.3d at 778 ("If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent.") (citations omitted). A supervisor who has discretion over the decision to grant leave discourages an employee from taking leave by interfering with the length and dates of leave or denying leave out right. *Liu v. Amway*,

---

[3] In her controverting statement of facts, Wallace makes a series of objections to facts that did not factor into the Court's analysis of this argument. Doc. 23 at ¶¶ 7, 13, 18, 20, 22, 27. None of these objections relate to the investigation's actual findings or Wallace's admission of ethical violations.

347 F.3d 1125, 1134 (9th Cir. 2003). Crowley's request that Wallace delay her FMLA leave thus may have interfered with "the length and dates of leave." *Id*.

As to Sellers' alleged harassment of Wallace after she disclosed her need for medical leave, any action by an employer that deters an employee from participating in FMLA-protected activities qualifies as an interference with FMLA rights. *Bachelder*, 259 F.3d at 1124. Accordingly, Seller's action may also constitute interference.

The Court will deny summary judgment on Wallace's claim that LMC interfered with her leave by discouraging her from taking it.

### 3. Timely Notice of Eligibility.

The Department of Labor regulations require an employer to provide employees with a notice of eligibility within five business days of learning that an employee's leave may fall under the FMLA. 29 CFR § 825.300(b)(1) & (2). Failing to do so can constitute interference where the failure affects an employee's FMLA rights. *Listo v. Nevada ex rel. its Dep't of Bus. & Indus.*, 311 F. App'x, 1002 (9th Cir. 2009). The FMLA provides no relief, however, unless the violation has prejudiced the employee. *Id*.

Wallace argues she did not receive a notice of eligibility until February 1, 2016, two months after she first discussed her need for FMLA leave with Crowley. Doc. 23 at ¶ 50. She also alleges that she discussed leave with Carolyn Jones on December 22, 2015. *Id*. at ¶ 51. It was Jones who suggested intermittent-FMLA leave as "the best of both worlds" and advised Wallace to start the process by contacting Crowley. *Id*.

LMC argues that Wallace formally requested leave on Friday, January 29, 2016, and that it complied with notice requirement by providing her FMLA paperwork on Monday, February 1, 2016. Doc. 28 at 9; Doc. 19 at 7. As noted above, however, the date of Wallace's formal request is irrelevant given evidence that she discussed FMLA leave with LMC in December 2015.

But Wallace does not argue, and no evidence suggests, that LMC's failure to provide timely notice of eligibility prejudiced her exercise of FMLA rights. The Court accordingly will grant summary judgment on this claim.

### 4. Leave Designation.

Wallace argues that LMC shortened her leave by improperly failing to designate it as FMLA leave when it began, and by later retroactively designating it as FMLA leave without her consent. Doc 25 at 7. She contends LMC did this to terminate her employment sooner. *Id*. LMC argues that it did not initially designate her leave as covered by the FMLA because Wallace had not provided the necessary paperwork. Doc. 28 at 9.

Department of Labor regulations require an employer to notify an employee whether leave will be designated as FMLA leave within five business days of determining that leave would be covered. 29 CFR § 825.300. Failure to do so may constitute an interference if it causes the employee harm. 29 CFR § 825.301. Wallace does not dispute that she failed to provide necessary paperwork (Doc. 19-2 at 289), and she identifies no harm from the delayed designation.

The regulations expressly allow an employer to retroactively designate leave as falling within the FMLA if proper notice is given to the employee and the retroactive designation does not harm the employee. 29 C.F.R. § 825.301(d). Wallace does not explain why, as she claims, LMC could retroactively designate her leave only with her consent. Nor does she show that LMC harmed her by retroactively designating her leave to January 29, 2016 – the date she originally requested. The Court cannot find that LMC violated Wallace's FMLA rights by retroactively designating her leave.

### 5. Leave as Negative Factor.

Wallace asserts that LMC used her FMLA leave as a negative factor when it replaced her immediately after placing her on administrative leave, refused to reinstate her, and terminated her employment. Doc. 25 at 9. The Court has already concluded that undisputed legitimate reasons supported Wallace's termination and lack of reinstatement, and therefore will focus only on her replacement argument.

Wallace argues that LMC replaced her before the investigation into her misconduct concluded, suggesting that LMC used her FMLA leave as a negative factor. Doc. 25 at 7-8. For support, she cites emails sent on February 9 and 11, 2016, by Mark Cheeks,

announcing Adam Young as her replacement. Doc. 23 at ¶ 53. As LMC notes, however, the February 9 email explained that "Mr. Young would serve in [Wallace's] role 'until such time as Ms. Wallace returns to duty or other definitive arrangements can be made.'" Doc 28 at 7 n.6, 10. Young's replacement of Wallace thus was temporary, and Department of Labor regulations implicitly recognize that an employer may temporarily reassign the responsibilities of an employee on leave. *See* 29 C.F.R § 825.214. ("An employee is entitled to "reinstatement even if [she] has been replaced or [her] position has been restructured to accommodate [her] absence."). Temporarily reassigning Wallace's responsibilities to Young did not violate the FMLA. *Id*; cf. *Farina v. Compuware Corp.*, 256 F. Supp. 2d 1033 (D. Ariz. 2003) (finding employer's business necessity justification pretextual given evidence that employer hired a permanent replacement without any effort to find a temporary replacement).

Aside from temporal proximity, Wallace presents no other evidence that Young replaced her because she requested FMLA leave. Given LMC's contemporaneous indication that Young's assignment to Wallace's responsibilities was temporary, the evidence is not sufficient for a reasonable jury to find that LMC used Wallace's leave as a negative factor by replacing her with Young.

Wallace also argues that LMC told her no work was available when, in fact, a customer had asked that she be assigned to its project. Doc. 25 at 9. But the customer's letter states that her assignment "would alleviate the *managerial* workload" (Doc. 23-2 at 36 (emphasis added)), and the Court has already found that LMC had legitimate reasons for denying her a leadership position. Wallace does not argue that other non-leadership work for which she qualified was available when she requested reinstatement.

The Court will grant summary judgment on this claim.

### 6. Change in Employment.

Wallace argues that LMC drastically changed her employment while she was on leave by withdrawing its sponsorship and reporting against her security clearance. Doc. 25 at 9. LMC argues that its obligations under the Department of Defense Visitor Group

Security Agreement required it to report the ethics investigation's findings. Doc. 28 at 3-4. LMC also argues that it withdrew sponsorship because Wallace's misconduct rendered her unqualified for her original position. *Id.* As a result, LMC could not revalidate Wallace for a security clearance. *Id.*

As noted above, Wallace has failed to present evidence from which a reasonable jury could find that LMC's reliance on her ethical violations was pretextual. And she provides no evidence to suggest that LMC was not required to withdraw her sponsorship and report her misconduct if the findings were legitimate. *See* Doc. 28 at 3 ("LMC reported the substantiated allegations to United States Air Force Information Protection in accordance with its reporting obligation under the Department of Defense Visitor Group Security Agreement … LMC could not revalidate the need for [Wallace's] Department of Defense security clearance [because she no longer qualified for her original position and could not support the F-35 program]").

The Court will grant summary judgment on this claim.

### 7. Non-FMLA Pay, and Communication.

Wallace finally contends that LMC interfered in her FMLA rights by refusing to communicate with her about her job status and refusing to pay her for non-FMLA time. Doc. 25 at 8. She cites no legal authority supporting these arguments. Although she devotes three pages in the beginning of her response brief to "FMLA legal standards" (Doc. 25 at 3-6), none of the cited authority supports her contention that the FMLA requires employers to communicate with employees on leave and pay them for non-FMLA time. The Court will grant summary judgment on this claim.

### B. Retaliation.

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). The key to an FMLA retaliation claim is that the employer punishes an employee "for *opposing* unlawful practices by the employer." *Liu*, 347 F.3d at 1136 (emphasis in original); *see also Gressett v. Cent. Arizona Water*

*Conservation Dist.*, No. CV-12-00185-PHX-JAT, 2014 WL 4053404, at *9 (D. Ariz. Aug. 14, 2014) (explaining difference between interference and retaliation claims).

To establish a prima facie case of FMLA retaliation, a plaintiff must show (1) she engaged in a protected activity by opposing her employer's unlawful practices, (2) she suffered an adverse employment action, and (3) there was a causal link between her protected activity and the adverse employment action. *Sanders*, 657 F.3d at 777 n.3. If a plaintiff establishes a prima facie case, "the burden then shifts to the defendant to articulate 'a legitimate, nondiscriminatory reason for the adverse employment action.'" *Sanders*, 657 F.3d at 777 n.3. "If the employer articulates a legitimate reason for its action, the plaintiff must then show that the reason given is pretextual." *Id*.

LMC contends Wallace cannot establish a causal link between her protected activity and any adverse employment action. Doc. 19 at 13; Doc. 28 at 4. Wallace argues that temporal proximity supports causation. Doc. 25 at 14. She also contends that temporal proximity is strengthened where there is a series of adverse employment actions, the explanations for which are inconsistent. *Id*.

The Supreme Court has held that causation for Title VII retaliation (and by extension, FMLA retaliation) requires a showing that protected activity was the but-for cause of an adverse employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Wallace alleges she engaged in protected activity on four occasions, each of which was followed by an adverse employment action. Doc. 25 at 14.

### 1. Sellers' Report to Ethics.

On January 26, 2016, Wallace alleges that she confronted Sellers for his behavior mocking her health and threatening to replace her. *Id*. She contends that she suffered an adverse employment action when Sellers reported her to the Ethics Department the next day, triggering the misconduct investigation. *Id*. Ten days later, on February 8, Wallace claims she suffered another adverse employment action when LMC placed her on administrative leave pending the ethics investigation and designated Young as her replacement. *Id*. LMC contends that opposing Sellers' statements was not a protected

activity because it was not an active opposition to a violation of the FMLA. The Court does not agree.

The evidence presented by the parties creates a question of fact on whether Sellers was a supervisor in Wallace's chain of command. If he was, his alleged harassment and threats in response to Wallace's health problems and her need for leave would have discouraged a reasonable employee from exercising FMLA rights. Sufficient evidence exists for a reasonable jury to find that Wallace's complaint about Sellers' conduct was protected because it was active opposition to an FMLA violation. The Court will deny summary judgment on this claim.[4]

### 2. March 3, 2016 Evidence Preservation Letter.

Wallace alleges that she engaged in protected activity on March 3, 2016, when her former attorney sent an evidence preservation demand to LMC that referenced FMLA violations. *Id*. The next day, she alleges, LMC reported against her security clearance, and, on April 27, LMC changed Wallace's leave to unpaid. Doc. 25 at 15. LMC alleges that the ethics investigation had already substantiated Wallace's misconduct and LMC had already begun the process of reporting Wallace's misconduct to the government when the letter from her lawyer arrived. Wallace admits that LMC had substantiated at least one misconduct allegation by February 26, 2016, a week before her attorney's letter arrived (Doc. 23 at ¶ 58), and she does not dispute that LMC began the process of reporting against her security clearance on March 2, 2016, the day before the letter was received (citing Exhibit G, Doc. 19-2 at 268-269). Therefore, reporting against Wallace's security clearance could not have been motivated by the March 3 letter. Doc. 28 at 4-5. The Court will grant summary judgment on this claim.

### 3. Complaints about FMLA Violations.

On June 2, 2016, Wallace complained to human resources about FMLA violations, and on July 8 her attorney sent a demand letter requesting that she be reinstated. *Id*. On

---

[4] The Court notes that any damages Wallace might recover from this retaliation would be limited to those resulting from the impairment of her FMLA rights, not damages resulting from her ethics violations, the factual basis for which she has conceded.

July 12, she allegedly suffered another adverse employment action when LMC told her not to report for work because no work was available for her. Doc. 25 at 14. LMC argues that no work was available because she no longer qualified for a leadership position due to her established misconduct. Doc. 28 at 6.

On November 21 and 28, 2016, Wallace complained about FMLA violations to corporate investigators and LMC's CEO, respectively. *Id*. On December 1, she allegedly suffered an adverse employment action when her security clearance was unsponsored.

On March 15, 2017, Wallace was informed that she would be terminated. *Id*. LMC claims it could not revalidate Wallace for a security clearance given her removal from her original position on the basis of her misconduct, a decision made a year earlier. Doc. 28 at 6.

As noted above, LMC has articulated legitimate reasons for the adverse employment actions that followed these complaints. Wallace relies on the same pretext arguments she used in the first interference claim. Having concluded that Wallace's pretext argument is insufficient, the Court finds Wallace has failed to present sufficient evidence for a reasonable jury to conclude that LMC retaliated against her for the June and November protected activities. The Court will grant summary judgment on this claim.

**IV. Wallace's Motion to Strike.**

Wallace has filed a motion to strike attachments to Defendant's reply brief. Doc. 28. The "Local Rules do not contemplate attaching additional exhibits to replies in support of summary judgments or filing a separate response to the non-moving party's statement of facts." *Kinnally v. Rogers Corp.*, No. CV-06-2704-PHX-JAT, 2008 WL 5272870 (D. Ariz. Dec. 12, 2008). The Court will grant Wallace's motion to strike.

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 19) is **granted** in part and **denied** in part: Summary judgment is **denied** on Wallace's interference by discouragement claim and her retaliation claim for opposing Sellers' discouragement. Summary judgment is **granted** on all remaining claims.

2. Plaintiff's Motion to Strike (Doc. 29) is **granted**.

3. The Court will hold a telephone conference on **May 28, 2019 at 3:30 p.m.** for the purpose of setting the pretrial conference and trial in this matter. Counsel for Plaintiff shall initiate a conference call to include counsel for all parties and the Court. If a dial-in number is to be used, counsel for Plaintiff shall provide the dial-in information to counsel for all parties and the Court no later than May 24, 2019 at 4:00 p.m.

Dated this 14th day of May, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge